UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EQUITY RESOURCES, INC.,

        Plaintiff,

                                    Case No. 2:21-cv-5922
    v.                              Judge Edmund A. Sargus, Jr.
                                      Magistrate Judge Chelsey M. Vascura

T2 FINANCIAL, LLC, D/B/A
REVOLUTION MORTGAGE,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on several motions in limine filed by Plaintiff Equity Resources, Inc. (ECF Nos. 105, 106) and Defendant T2 Financial, LLC d/b/a Revolution Mortgage (ECF Nos. 97, 98, 101, 102, 103). For the reasons stated below, Revolution's motion to exclude the opinion testimony of Edwin Rizor (ECF No. 102) is **GRANTED in part** and **DENIED in part**; Revolution's motion to exclude evidence of lost profits (ECF No. 97) is **DENIED**; Revolution's motions to preclude Equity from claiming certain trade secrets (ECF Nos. 98, 101) are **DENIED**; and Revolution's motion to exclude the testimony of Tom Piecenski (ECF No. 103) is **DENIED**. Equity's motion to exclude evidence related to Daniel Walker (ECF No. 105) and its motion to exclude the examples of Encompass Instructions published on the internet (ECF No. 106) are **DENIED**.

## BACKGROUND[1]

This case is about whether Revolution orchestrated a plan to recruit former Equity employees to use and misappropriate certain confidential information, or trade secrets, from Equity in order to divert mortgage loans to their new employer, Revolution.

---

[1] For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order in this case. (ECF No. 80.)

Equity and Revolution are two competing mortgage lenders. (ECF No. 80, PageID 2450.) Between April 2021 and June 2021, three employees—April Roberts, Larry Dugger, and Kelly Thoman—left Equity and joined Revolution as loan officers. (*Id.* at PageID 2452–53.) April Roberts and Larry Dugger left Equity in April 2021. (*Id.* at PageID 2451.) Equity asserts that before leaving, April Roberts inappropriately took two types of protected information: (1) a customer list and (2) a set of instructions explaining how to input information into Equity's loan origination system Encompass ("Encompass Instructions"). (*Id.*) The weekend after April Roberts and Larry Dugger left, Equity contends that Kelly Thoman forwarded emails to their new emails addresses that included borrower referrals and customer leads. (*Id.* at PageID 2452.) After being disciplined for forwarding the emails, Kelly Thoman also left Equity to join Revolution in June 2021. (*Id.*)

Equity then filed this lawsuit against Revolution and the three employees in November 2021 alleging that Revolution solicited Equity's former employees to steal its trade secrets and used those trade secrets to divert mortgage loans from Equity to Revolution. (*See* Am. Compl., ECF No. 7.) The individual employees have since been dismissed as defendants. (ECF Nos. 25, 26.) After discovery, both parties filed motions for summary judgment. (ECF Nos. 46, 47.) This Court granted in part and denied in part Revolution's motion for summary judgment (ECF No. 47) and denied Equity's motion (ECF No. 46). (ECF No. 80.) Equity's remaining claims against Revolution are (1) tortious interference with a business relationship, (2) conversion, and (3) misappropriation of trade secrets.[2]

---

[2] Equity brings misappropriation of trade secrets claims under both the Ohio Uniform Trade Secrets Act, R.C. § 1333.61 ("OUTSA") and under the federal Defend Trade Secrets Act, 18 U.S.C. § 1839 ("DTSA"). Because the acts are similar in scope and contain nearly identical definitions of statutory terms, the claims are analyzed together. *See Ridge Corp. v. Altum LLC*, No. 2:21-cv-5915, 2023 U.S. Dist. LEXIS 19926, at *5 (S.D. Ohio Feb. 3, 2023) (Morrison, J.) (analyzing federal and state claims together).

This case is set for trial on March 18, 2024. Equity and Revolution each filed motions in limine regarding the anticipated evidence at trial. After responses from each, this matter is ripe for the Court's review.

## STANDARD OF REVIEW

Neither the Federal Rules of Evidence[3] nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion in limine. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). Motions in limine allow the Court to rule on the admissibility of evidence before trial to expedite proceedings and provide the parties with notice of the evidence upon which they may not rely to prove their case. *Bennett v. Bd. of Educ. of Washington Cnty. Joint Vocational Sch. Dist.*, C2-08-CV-0663, 2011 U.S. Dist. LEXIS 116412, at *2 (S.D. Ohio Oct. 7, 2011) (Marbley, J.).

To prevail on a motion in limine, the movant must show that the evidence is clearly inadmissible. *Id.* If the movant fails to meet this high standard, a Court should defer evidentiary rulings so that questions of foundation, relevancy, and potential prejudice may be resolved in the context of trial. *Henricks v. Pickaway Corr. Inst.*, No. 2:08-CV-580, 2016 WL 4577800, at *2 (S.D. Ohio Sept. 2, 2016) (Marbley, J.). Whether to grant a motion in limine is within the discretion of the trial court. *Id.* (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012); *Bennett*, 2011 WL 4753414, at *1.) The Court may reconsider the admissibility of evidence and even change its ruling on a motion in limine "as the proceedings give context to the pretrial objections." *Id.*

---

[3] All references to "Rules" herein are to the Federal Rules of Evidence unless otherwise noted.

3

## ANALYSIS

Revolution filed three motions in limine seeking a Court Order addressing the following: (I) excluding the expert and opinion testimony of Edwin Rizor (ECF No. 102) and certain evidence Mr. Rizor will rely on to prove lost profits at trial (ECF No. 97); (II) precluding Equity from claiming that certain documents are trade secrets (ECF Nos. 98, 101); and (III) excluding the testimony of Tom Piecenski (ECF No. 103). Equity filed two motions in limine seeking to (IV) exclude the deposition testimony of Anthony Anderson related to Daniel Walker (ECF No. 105) and (V) to exclude examples of instructions created by other mortgage lenders related to the use of the Encompass system (ECF No. 106). The Court addresses each in turn.

### I. Revolution's Motions in Limine to Exclude Testimony of Edwin Rizor (ECF No. 102) and Evidence Related to Lost Profits (ECF No. 97)

Revolution's motions in limine (ECF Nos. 97, 102) seek to limit Equity's ability to introduce testimony at trial regarding Equity's purported damages. Specifically, Revolution moves to prevent Equity's president, Edwin Rizor from offering an expert opinion or a lay opinion on lost profit damages, or from testifying on anything that may contradict his deposition testimony. (ECF No. 102.) Revolution also seeks an order from this Court excluding the exhibits and documents Mr. Rizor used to calculate Equity's purported damages, including third-party industry reports. (ECF No. 97.)

#### A. Testimony of Edwin Rizor (ECF No. 102)

Equity argues that Mr. Rizor should be allowed to offer lay opinion testimony and should be recognized as an expert to testify on damages. (ECF No. 113.) Revolution however argues that Mr. Rizor's testimony should be excluded under Rules 701 and 702. (ECF No. 102.)

Revolution argues that Mr. Rizor lacks personal knowledge about the factors used to estimate Equity's lost profits, and therefore his opinion testimony about Equity's damages

4

should be excluded under Rule 701. (ECF No. 102, PageID 2589.) Equity disagrees and submits that Mr. Rizor is the president and founder of the company and has worked in the mortgage-loan industry for 35 years. (ECF No. 113, PageID 3021.) His experience gives him personal knowledge about the factors on which Equity relies to estimate its lost profits. (*Id.*)

Rule 701 allows a witness who is not testifying as an expert to give a lay opinion that is (a) rationally based on the witness's perception; (b) helpful to understand the witness's testimony or to determine a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. The Advisory Committee Notes explain that:

> Most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

Fed. R. Evid. 701, Advisory Committee Notes for the 2000 Amendments (internal citations omitted). Courts in this Circuit recognize that the commentary above "envisions testimony of damages by officers of businesses." *Advanced Drainage Sys. v. Quality Culvert, Inc.*, No. 2:12-1121, 2015 U.S. Dist. LEXIS 36037, at *28 (S.D. Ohio Mar. 23, 2015) (Economus, J.) (citing *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, 963 F. Supp. 2d 722, 732 (E.D. Mich. 2013)). Further, an officer with knowledge and participation in the day-to-day affairs of the business can rely on documents prepared by others, "while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible." *Id.* (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993)).

Revolution relies on *LifeWise Master Funding v. Telebank*, a Tenth Circuit decision which excluded a corporate officer's lay opinion testimony on lost profit damages. 374 F.3d 917,

930 (10th Cir. 2004). There, the Tenth Circuit held the company president could not testify about damages calculated by "rolling averages, S-curves, and compound growth rates" that the president had never used in his job. *Id.* But the Tenth Circuit noted that the president "could have given a straightforward opinion as to lost profits using conventional methods based on [the company's] actual operating history." *Id.*

Here, Mr. Rizor's opinions on Equity's damages are based on his particularized knowledge by virtue of his position as the president and founder of Equity, not because of his specialized knowledge as an expert. Mr. Rizor testified in his deposition about the factors used to estimate Equity's lost profits. (*See* Rizor Dep., ECF No. 113-1, 22:1–22:4.) He testified that Equity's profits per loan were usually in line with the industry average, and that he reached his lost profit estimate by multiplying that average profit per loan by the number of loans allegedly diverted by Revolution. (*Id.* at 36:19–37:1.) This calculation was straightforward and distinguishable from *LifeWise* where the president used complicated metrics like "rolling averages, S-curves, and compound growth rates." (ECF No. 113, PageID 3022.) Accordingly, and because courts in this Circuit allow corporate officers to offer opinion testimony on their business damages, Mr. Rizor's opinions on lost profits will be admissible under Rule 701. Revolution remains free to object to specific statements at trial.

This finding precludes Equity from offering Mr. Rizor as an expert under Rule 702. A witness can offer lay opinion testimony if they are not testifying as an expert by giving an opinion based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. Further, Equity did not disclose Mr. Rizor as an expert witness. Accordingly, Equity may not offer Mr. Rizor as an expert witness at trial.

6

### B.    Mr. Rizor's Purported Unresponsive Deposition Testimony

Next, Revolution seeks an Order preventing Mr. Rizor from testifying at trial about anything that may contradict his deposition testimony. (ECF No. 102, PageID 2591.) Revolution submits that Mr. Rizor was unresponsive to questions about Equity's purported damages during his Rule 30(b)(6) deposition. (*Id.*) Revolution argues that Mr. Rizor should be confined to his deposition testimony at trial to discourage parties from deliberately presenting uninformed or unresponsive corporate witnesses at depositions, and then later educating the witness to offer more favorable and responsive testimony at trial. (*Id.*) Equity refutes that Mr. Rizor was unresponsive during his deposition. (ECF No. 113, PageID 3026.)

A Rule 30(b)(6) designee must be knowledgeable about the subjects described in the notice of deposition and the corporate entity must prepare that witness to testify not just to his or her own knowledge, but to the organization's knowledge. *Oro BRC4, LLC v. Silvertree Apartments, Inc.*, No. 2:19-cv-4907, 2022 U.S. Dist. LEXIS 48274, at *33 (S.D. Ohio Mar. 18, 2022) (Marbley, J.) (but noting that "absolute perfection" is not required in preparing the witness). While the testimony of a Rule 30(b)(6) designee may be binding on the party offering it, the corporate entity is not precluded from updating or clarifying the deposition testimony at trial. *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, 2013 WL 1791083, at *11 (S.D. Ohio April 26, 2013) (M.J., King); *Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-CV-679, 2009 U.S. Dist. LEXIS 101106, at *5 (W.D. Mich. Oct. 30, 2009).

A party is however precluded from first offering a non-responsive Rule 30(b)(6) witness and then later calling a different, more-responsive witness at trial. *Ruth v. A.O. Smith Corp.*, No. 1:04-CV-18912, 2006 U.S. Dist. LEXIS 7361, at *30 (N.D. Ohio Feb. 27, 2006). Revolution cites *Ruth* to argue that Mr. Rizor was so unresponsive at his deposition, that any testimony of

7

his that is now more responsive should be excluded. (ECF No. 102, PageID 2591.) But *Ruth* is distinguishable because the corporate entity in that case offered a new, different, and more-responsive corporate designee at trial. *Ruth*, 2006 U.S. Dist. LEXIS 7361, at *3.

Here, Equity is not trying to offer a new corporate designee or suggesting that it is not bound by Mr. Rizor's deposition testimony. (ECF No. 113, PageID 3026.) To the extent that Mr. Rizor's testimony is "more responsive" at trial by merely clarifying or updating his deposition testimony, "no rule of evidence or civil procedure requires its exclusion on that basis alone." *Dow Corning Corp. v. Weather Shield Mfg.*, No. 09-10429, 2011 U.S. Dist. LEXIS 111419, at *14 (E.D. Mich. Sep. 29, 2011). Of course, to the extent that Mr. Rizor's testimony at trial contradicts his deposition testimony, Revolution can impeach Mr. Rizor with his prior inconsistent testimony. The Court, however, is not persuaded by Revolution's argument that Mr. Rizor should be barred from testifying at trial on the grounds that his Rule 30(b)(6) testimony was non-responsive.

Accordingly, the motion to preclude Mr. Rizor from offering opinion testimony at trial (ECF No. 102) is **GRANTED in part** and **DENIED in part**. Mr. Rizor may offer lay opinion testimony on Equity's lost profits under Rule 701 but may not offer expert testimony under Rule 702. While Equity is bound by Mr. Rizor's Rule 30(b)(6) testimony, Mr. Rizor may clarify and update his deposition testimony, but may be impeached with any inconsistencies.

### C. Industry Reports Relating to Equity's Lost Profits (ECF No. 97)

Revolution has also moved to exclude the evidence that Equity and Mr. Rizor may rely on when testifying about Equity's lost profit damages. (ECF No. 97.) Specifically, Revolution moves to exclude three third-party industry reports and a list of closed loans that Revolution allegedly improperly diverted from Equity. (*Id.* at PageID 2540.) Equity does not intend to offer

8

the list of closed loans into evidence (ECF No. 113, PageID 3032), and thus Revolution's motion (ECF No. 97) is **DENIED in part as moot** regarding the closed loan list.

Equity does, however, intend to offer the third-party industry reports, including:

> (1) MBA Annual Mortgage Bankers Performance Report for 2021 ("MBA Report");
>
> (2) An email newsletter from the Mortgage Bankers Association enclosing a "Chart of the Week," bar graph ("MBA Chart");
>
> (3) MBA Production Profits Article by Adam DeSanctia ("MBA Production Profits Article").

According to Revolution, these reports should be excluded because each contains inadmissible hearsay, cannot be authenticated, and their probative value would be substantially outweighed by the danger of unfairly prejudicing Revolution and confusing the jury. (*Id.* at PageID 2546–47.)

### i. Hearsay (Rule 803(17))

First, Revolution argues that the industry reports are inadmissible hearsay because they are being offered to prove the truth of the matter asserted—the average revenue and expenses that a mortgage lender like Equity would sustain. (*Id.* at PageID 2545.) Equity submits that these reports are not being offered for the truth of their contents and should be admissible under Rule 803(17) as a commercial publication relied on by those in the mortgage lending industry. (ECF No. 113, PageID 3030.) The Court agrees with Equity.

Rule 803(17) provides, "Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" are not excluded by the rule against hearsay. Fed. R. Evid. 803(17). All three industry reports fall within this exception to the rule against hearsay because they are relied upon by those in the mortgage lending industry and are published commercial data compilations.

### ii. Authentication (Rule 901)

Next, Revolution argues that Mr. Rizor cannot authenticate any of the reports because he does not have actual knowledge of the creation of the reports. (*See* ECF No. 97, PageID 2545.) To be authenticated, a proponent of the evidence need only produce proof "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) describes the methods by which evidence is authenticated. Fed. R. Evid. 901(b).

Mr. Rizor need not have personal knowledge of the creation of the reports to produce evidence sufficient to support a finding that the reports are what Equity claims they are. Distinctive characteristics of the reports, including the Mortgage Bankers Association's branding and logo, taken together with the content and substance can show sufficient evidence of authenticity. *See* Fed. R. Evid. 901(b)(4). Rule 901 does not require that the reports be probative of a particular fact or that a proponent prove beyond doubt that the evidence is what it purports to be. *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15CV00666, 2018 U.S. Dist. LEXIS 55557, at *14 (N.D. Ohio Mar. 30, 2018) (citations omitted).

Accordingly, the Court will not grant Revolution's motion in limine on the grounds that Mr. Rizor lacks personal knowledge of the creation of the reports. Issues of authentication and foundation are issues better examined during trial as evidence is presented in the context of the parties' arguments and testimony. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d at 846 (noting that unless evidence is clearly inadmissible on all potential grounds, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in [the] proper context"). Revolution may renew its objections at trial if appropriate and remains free to attack the credibility, weight, and probative value of the industry reports during cross-examination.

10

### iii. Best Evidence Rule (Rule 1002)

Revolution also argues the Court should exclude the third-party industry reports under the best evidence rule. (ECF No. 97, PageID 2546.) Rather than relying on industry reports, Revolution contends that Equity must use its original financial records to prove damages. (*Id.*)

Rule 1002, often referred to as the "best evidence rule" states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or federal statute provides otherwise." Fed. R. Evid. 1002. The best evidence rule, in other words, has no applicability unless a party seeks to prove the contents of a particular document. *Americredit Fin. Servs. v. Lyons*, No. 3:19-cv-01045, 2022 U.S. Dist. LEXIS 6782, at *30 (M.D. Tenn. Jan. 13, 2022) (citations omitted). Equity is not seeking to prove the contents of its financials with the industry reports, but rather offers the reports to compare its estimated lost profits to the industry average. Because Equity is not offering the reports to prove the contents of a particular document, the best evidence rule does not apply.

### iv. Unfair Prejudice (Rule 403)

Lastly, Revolution argues that even if the industry reports are admissible, they should be excluded because their probative value is substantially outweighed by the dangers of confusing the jury and unfairly prejudicing Revolution. (ECF No. 97, PageID 2546.) Revolution reasons that the averages included in the reports offers very little probative value of the estimated lost profit on Equity's loans. (*Id.* at PageID 2545.) The reports fail to account for the size or type of loans included in their reported averages, as well the costs of the bank operations—all of which impact the profitability of mortgage loans. (*Id.*)

Revolution's arguments are directed at the persuasive weight the Court should assign to the reports, rather than their admissibility. Revolution remains free to challenge the probative

11

value of the industry reports at trial. But Revolution has not set forth sufficient evidence that the potential prejudice it would face would rise to the level that warrants exclusion.

Accordingly, Revolution's motion in limine to exclude the exhibits and documents, including third party industry reports, Mr. Rizor used to calculate Equity's purported damages (ECF No. 97) is **DENIED**.

## II. Revolution's Motion in Limine to Preclude Equity from Claiming Certain Trade Secrets at Trial (ECF Nos. 98 and 101)

Revolution requests that this Court preclude any evidence of trade secrets that Equity did not identify as a trade secret in discovery. As a procedural matter, Revolution filed an Amended motion (ECF No. 101) to replace the previously filed motion making the same arguments (ECF No. 98). Accordingly, the original motion in limine (ECF No. 98) is **DENIED as moot**.

Now turning to the merits of Revolution's amended motion. First, Revolution asserts that Equity impermissibly alleged two newly claimed trade secrets in its motion for summary judgment, after discovery closed. (ECF No. 46.) The alleged newly claimed trade secrets are: (1) email instructions explaining how to input information into Encompass and (2) information from Equity's customer relationship management system. (ECF No. 101, PageID 2567.) Because Equity did not disclose these two trade secrets in its supplemental response to Revolution's Interrogatories, Revolution argues Equity should not be allowed to use that information at trial under Rule 37(c)(1) of the Federal Rules of Civil Procedure. (*Id.* at PageID 2569.)

Second, Revolution asserts that Equity intends to "expand its trade secret claim and present to the jury any document exchanged in discovery as a claimed trade secret at trial." (*Id.* at PageID 2568.) During discovery, Equity identified only 32 specific documents as being claimed trade secrets. (*Id.* at PageID 2569.) But now Revolution asserts Equity has identified more than 150 exhibits, any of which it could claim are trade secrets at trial. (*Id.*)

12

The first step in any misappropriation of trade secrets claim is to establish the existence of a trade secret. Courts in the Sixth Circuit require a plaintiff to identify the information it claims is entitled to protection as a trade secret with sufficient "specificity to separate the secret from the general knowledge." *Ridge Corp. v. Altum LLC*, No. 2:21-cv-5915, 2023 U.S. Dist. LEXIS 19926, at *6 (S.D. Ohio Feb. 3, 2023) (Morrison, J.).

In this Court's Opinion and Order on the parties' motions for summary judgment, the Court held that Equity put forth sufficient evidence to identify with particularity three categories of trade secrets. (ECF No. 80, PageID 2468–69.) Those three categories included (1) Equity's customer database, or CRM, (2) loan documents containing customer non-public information, and (3) the Encompass Instructions. (*Id.*) Equity now asks the Court to reverse course and find all three categories were not identified with sufficient particularity to be introduced at trial. (ECF No. 101, PageID 2569.) The Court declines to revisit its summary judgment ruling in the context of a motion in limine.

Given the Court's prior ruling on this issue, the Court **DENIES** Revolution's motion (ECF No. 101). Equity may introduce evidence and testimony of trade secrets within the three categories described in this Court's prior Opinion and Order (ECF No. 80).

### III. Revolution's Motion in Limine to Exclude Trial Testimony of Equity's Vice President Tom Piecenski (ECF No. 103)

Revolution seeks an Order excluding the trial testimony of Equity's Vice President, Tom Piecenski. (ECF No. 103.) Equity did not include Mr. Piecenski in its initial disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure. (ECF No. 103-1.) But Equity did include Mr. Piecenski on its list of witnesses for trial filed on February 12, 2024. (ECF No. 93, PageID 2510.) Because Equity failed to include Mr. Piecenski in its initial disclosures,

13

Revolution argues that Mr. Piecenski should be barred from testifying under Rule 37 of the Federal Rules of Civil Procedure. (*Id.* at PageID 2609–10.)

Equity reasons that while Mr. Piecenski was not included in its initial disclosures, Mr. Piecenski was listed as someone who may have discoverable information and included in Equity's response to Revolution's first set of interrogatories. (ECF Nos. 111, 111-1.) Therefore, Mr. Piecenski is not a surprise witness and any alleged harm caused by the late disclosure is harmless and outweighed by the importance of Mr. Piecenski's testimony. (ECF No. 111, PageID 2955–56.)

Rule 37 states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37 ensures timely production of evidence and prevents abuse of the discovery process by future litigants. *Hardesty v. Kroger Co.*, No. 1:16-cv-298, 2022 U.S. Dist. LEXIS 43300, at *10 (S.D. Ohio Mar. 11, 2022) ("too much leniency rewards untimely production of evidence").

When determining whether a late disclosure is "substantially justified" or "harmless," courts balance these five factors:

(1) the surprise to the party against whom the evidence would be offered;

(2) the ability of that party to cure the surprise;

(3) the extent to which allowing the evidence would disrupt the trial;

(4) the importance of the evidence;

(5) the non-disclosing party's explanation for its failure to disclose the evidence.

The goal in weighing these factors is to separate the honest mistakes from the "underhanded gamesmanship that warrants the harsh remedy of exclusion." *Bisig v. Time*

14

*Warner Cable, Inc*., 940 F.3d 205, 219 (6th Cir. 2019) (citations omitted). On balance, the Court finds the five factors favor Equity.

### A.  Surprise

Revolution claims it was surprised by Equity's inclusion of Mr. Piecenski in their February 12, 2024 list of witnesses for trial. (ECF No. 103, PageID 2610–11.) Equity does not appear to dispute that it failed to include Mr. Piecenski on its list of initial disclosures, but submits any surprise was cured by its inclusion of Mr. Piecenski in its first set of responses to Revolution's interrogatories. (ECF No. 111, PageID 2950.) Equity disclosed in those responses that Mr. Piecenski may have knowledge of the "customers and sales activities" of the three individual employees and former defendants, but Revolution contends that Equity did not disclose that Mr. Piecenski would have discoverable information about Equity's misappropriation of trade secrets claims. (*Id.* at PageID 2951; ECF No. 103, PageID 2612.) Because Revolution was not under the impression that Mr. Piecenski had relevant knowledge to the misappropriation of trade secrets claim, Revolution did not depose Mr. Piecenski. (ECF No. 103, PageID 2612.) Accordingly, the Court finds this factor weighs in Revolution's favor.

### B.  Ability to Cure and Disruption at Trial

Revolution argues that it has no ability to depose Mr. Piecenski because the discovery cutoff deadline has passed. (ECF No. 103, PageID 2613.) Thus, according to Revolution, allowing him to testify will be disruptive at trial because Revolution has no way of knowing what his testimony will be. (*Id*.)

While the discovery deadline expired, Revolution has two options available to it to cure the surprise. First, since Revolution, despite diligent efforts, did not have the opportunity to depose Mr. Piecenski during discovery, the Court will reopen discovery for the very limited purpose of allowing Revolution to depose Mr. Piecenski before trial, if it so choses. *See, e.g.*,

15

*Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010) (holding the most important inquiry when evaluating whether to allow further discovery under the good cause standard is whether the party was diligent in pursuing discovery).

Second, Revolution can cure its surprise through cross-examination of Mr. Piecenski. *See EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019) ("[T]he ability to cross-examine witnesses about late disclosures during trial both provided an opportunity to remedy surprise and minimized impact on the trial.") With these remedies in mind, the Court finds the second and third factors weigh in Equity's favor.

### C. Importance of the Evidence

Equity claims that Mr. Piecenski's testimony is "of key and obvious importance to this case." (ECF No. 111, PageID 2957.) Mr. Piecenski will offer testimony on the employment obligations of Equity employees, the misappropriation of Equity's trade secrets, and the individual employees alleged tortious interference with Equity's business relationships. (*Id.*)

Equity's emphasis of the importance of Mr. Piecenski's testimony hurts rather than helps its position. The more important the evidence or testimony, "the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Bisig*, 940 F.3d at 220. The parties appear to agree that the topics Equity designated Mr. Piecenski to testify about are central to the dispute between the parties. (ECF No. 103, PageID 2614; ECF No. 111, PageID 2957.) Because of its importance, the harm to Revolution of the tardy disclosure is greater; as well as the harm of precluding the testimony. Therefore, on balance the Court finds that this factor is neutral.

### D. Equity's Explanation for the Late Disclosure

Equity submits that it never sought to hide Mr. Piecenski as a potential witness at trial. While its initial disclosures failed to list Mr. Piecenski, Equity reasons that the initial disclosures are not intended to be a binding final list of people relevant to the case but are based on the

information reasonably available at the early stages of the litigation process. (ECF No. 111, PageID 2951–52.) Further, Mr. Piecenski was mentioned in other discovery documents that put Revolution on notice that he may have discoverable information. (*Id.*)

The Court finds no evidence that Equity engaged in gamesmanship in failing to disclose Mr. Piecenski in its initial disclosures as to warrant the harsh remedy of excluding his testimony. After considering the five factors above, the Court finds the factors favor Equity. To the extent that Revolution is unfairly surprised by Equity's witness list, the Court will allow Revolution to conduct a deposition of Mr. Piecenski before trial, if it so choses. Any additional harm caused by Equity's late disclosure can be cured by cross-examination. With these remedies in mind, Revolution's motion to preclude Tom Piecenski from testifying (ECF No. 103) is **DENIED**.

### IV. Equity's Motion in Limine to Exclude Deposition Testimony Related to Daniel Walker (ECF No. 105)

Equity moves to exclude the deposition testimony of Anthony Anderson and exhibits related to Daniel Walker. (ECF No. 105.) Equity argues that Mr. Walker is a third party, who is not involved here and thus any evidence related to Mr. Walker is irrelevant. (*Id.* at PageID 2690.) Mr. Walker was a loan officer and branch manager at Equity, who left Equity to join Revolution and then ultimately returned to Equity. (*Id.*) Equity seeks to exclude two categories of evidence related to Mr. Walker. First, an email from Mr. Walker's supervisor Mr. Anderson, where Mr. Anderson forwarded a customer lead to Mr. Walker after Mr. Walker left Equity ("March 19 Email"). (*Id.*; *see also* ECF No. 105-1.) Equity also moves to exclude portions of Mr. Anderson's deposition testimony related to Mr. Walker. (*Id.*; *see also* Anderson Dep., ECF No. 96.)

The Court finds both categories of evidence are relevant. Evidence is relevant, and admissible, if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 402. Here, Equity argues that April Roberts and

17

Larry Dugger impermissibly forwarded borrower referrals and other customer leads. (*See* ECF No. 80, PageID 2452.) Equity purportedly disciplined Kelly Thoman for forwarding the borrower referrals to April Roberts and Larry Dugger, claiming that customer leads were non-public customer information and trade secrets. (*Id.*) The March 19 Email, and Mr. Anderson's deposition testimony regarding that email, are relevant to whether customer leads are trade secrets and whether Equity had a policy in place that forbid employees from taking customer leads with them when they left employment with Equity.

The Court also disagrees with Equity that the probative value of the March 19 Email is "de minimis" and should be excluded under Rule 403. (ECF No. 105, PageID 2691.) A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403; *Robinson v. Runyon,* 149 F.3d 507, 512 (6th Cir. 1998) (emphasizing that there must be a danger of *unfair* prejudice, not mere prejudice). Equity has failed to put forth sufficient evidence to show that the probative value of the March 19 Email would be substantially outweighed by a danger of unfair prejudice. Thus, Equity's motion to exclude evidence related to Daniel Walker, including the March 19 Email and Mr. Anderson's deposition testimony (ECF No. 105) is **DENIED**.

## V. Equity's Motion in Limine to Exclude Examples of Encompass Instructions Published on the Internet (ECF No. 106)

Equity seeks an Order preventing Revolution from introducing into evidence examples of a set of instructions created by mortgage lenders in the industry on how to input data into a mortgage origination system called Encompass. (ECF No. 106.) As part of its misappropriation of trade secrets claim, Equity argues that Revolution misappropriated a set of instructions created by Equity to input data into Encompass ("Encompass Instructions"). To support its argument that

18

the Encompass Instructions were (1) not a trade secret and (2) that Revolution did not engage in the unauthorized use of these instructions, Revolution seeks to admit into evidence similar instructions publicly available online ("Encompass Examples"). (ECF No. 109, PageID 2933–34.) Equity argues that Revolution failed to disclose the Encompass Examples until the eve of trial, and thus should not be allowed to use them at trial pursuant to Rule 37. (ECF No. 106.)

Rule 37 of the Federal Rules of Civil Procedure prohibits a party from using evidence it failed to disclose during discovery unless the failure to disclose was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). To determine whether a late disclosure is substantially justified or harmless, courts balance five factors: (1) the surprise of the party against whom the evidence is offered; (2) the ability to cure the surprise; (3) the extent to which admitting the evidence would disrupt trial; (4) the importance of the evidence; and (5) the explanation for the failure to disclose. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citations omitted). When balanced, the five factors favor Revolution.

### A. Surprise

Equity argues it first learned that Revolution planned to introduce the Encompass Examples when the parties exchanged exhibit lists in February 2024. (ECF No. 106, PageID 2720.) Equity argues it was unfairly surprised by the tardy disclosure and was deprived of an opportunity to use these documents during depositions. (*Id.* at PageID 2723.)

Revolution counters that Equity was not unfairly surprised because the documents are publicly available on the internet and April Roberts discussed during her deposition that she found similar examples of the Encompass Instructions online. (ECF No. 109, PageID 2935; *see also* ECF No. 109-1.)

Likewise, the Court discussed the availability of similar instructions on the internet in its Opinion and Order on the parties' motions for summary judgment. (ECF No. 80, PageID 2469.)

19

The Court issued that Opinion on July 17, 2023, more than six months ago—mitigating Equity's claimed surprise. (*Id.*) Although Equity could not use the specific Encompass Examples during depositions, Equity was on notice that Revolution may introduce evidence of comparable instructions available on the internet at trial. Consequently, this factor is neutral.

### B.  Ability to Cure and Disruption at Trial

The ability to cure Equity's surprise is limited because the discovery cutoff has passed. Equity argues it will be substantially prejudiced and the trial will be disrupted by introducing the "hundreds of pages" of documents that Equity will hear details about for the first time at trial. (ECF No. 106, PageID 2723.) Revolution contends that the trial will not be disrupted because it intends to use only four pages of the Encompass Examples at trial. (ECF No. 109, PageID 2932.)

Equity can remedy some of its surprise through cross-examination at trial. *See EQT Prod. Co.*, 768 F. App'x at 469 (finding cross-examination about late disclosures remedied surprise and minimized the impact on trial). Additionally, any concerns about the trial being disrupted by the volume of pages contained in the Encompass Examples, are mitigated by Revolution's concession that it only intends to introduce a few pages of the Encompass Examples. (ECF No. 109, PageID 2932.) Accordingly, these factors weigh in favor of Revolution.

### C.  Importance of the Evidence

Revolution argues that the Encompass Examples are important evidence to rebut Equity's argument that the Encompass Instructions are trade secrets. (ECF No. 109, PageID 2936–37.) Generally, the more important the evidence, the greater the harm in excluding the evidence, but also in permitting the late disclosure. *Bisig*, 940 F.3d at 220. The Encompass Examples are relevant to whether instructions on the Encompass system, which Equity claims are entitled to protection as a trade secret, are publicly available or readily ascertainable. *Ridge Corp.*, 2023 U.S. Dist. LEXIS 19926, at *6 (noting that information that is "generally known, publicly

available, or readily ascertainable by skilled individuals in a plaintiff's field is not entitled to protection as trade secret information"). Because the Encompass Examples are central to whether the information in the Encompass Instructions was publicly available and thus a trade secret, the Court finds that the greater harm would occur from excluding the evidence. Accordingly, this factor favors Revolution.

### D. Revolution's Explanation for the Late Disclosure

Revolution explains that its late disclosure was caused by Equity's own late disclosure. (ECF No. 109, PageID 2933.) Revolution claims it proffered the Encompass Examples as rebuttal evidence after Equity disclosed for the first time in its motion for summary judgment that the Encompass Instructions were entitled to trade secret protection. (*Id.* at PageID 2934.) Revolution focused on preparing defenses to the 32 identified trade secrets in Equity's supplemental response to Revolution's Interrogatories, which did not include the Encompass Instructions. (*Id.* at PageID 2937.) According to Revolution, it did not begin preparing defenses regarding the Encompass Instructions until after Equity disclosed the instructions were entitled to trade secrets protections. (*Id.*)

After considering Revolution's explanation, the Court finds that Revolution's tardy disclosure was not the product of "underhanded gamesmanship that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citations omitted). While Equity only recently learned of the specific internet examples Revolution intended to introduce at trial, Equity knew from Revolution's motion for summary judgment and April Roberts deposition testimony that Revolution would argue the information was publicly available on the internet. Therefore, Equity's surprise is limited and can be cured through cross-examination. After balancing the five factors above, Equity's motion to exclude the Encompass Examples (ECF No. 106) is **DENIED**.

21

## CONCLUSION

For the reasons above, the Court orders:

- Revolution's Motion in Limine to Exclude the Opinion and Expert Testimony of Edwin Rizor (ECF No. 102) is **GRANTED in part** and **DENIED in part**.

- Revolution's Motion in Limine to Exclude Evidence of Lost Profits (ECF No. 97) is **DENIED**.

- Revolution's Motion in Limine to Preclude Equity from Claiming Certain Trade Secrets at Trial (ECF No. 98) is **DENIED as moot**. Revolution's Amended Motion (ECF No. 101) is **DENIED**.

- Revolution's Motion to Exclude the Trial Testimony of Tom Piecenski (ECF No. 103) is **DENIED**.

- Equity's Motion to Exclude Deposition Testimony Related to Daniel Walker (ECF No. 105) is **DENIED**.

- Equity's Motion to Exclude Examples of Encompass Instructions Published on the Internet (ECF No. 106) is also **DENIED**.

The case remains open.

**IT IS SO ORDERED.**

**3/8/2024**                                              **s/Edmund A. Sargus, Jr.**
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                                **UNITED STATES DISTRICT JUDGE**

22