UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EQUITY RESOURCES, INC.,

    Plaintiff,

v.

T2 FINANCIAL, LLC, D/B/A
REVOLUTION MORTGAGE,

    Defendant.

Case No. 2:21-cv-5922
Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

## ORDER

This matter is before the Court on Plaintiff Equity Resources, Inc.'s Motion for Award of Attorneys' Fees, Interest, and Costs. (Mot., ECF No. 149.) Equity asks the Court to award it $565,798.43 in attorneys' fees, interest on the attorneys' fees, and $14,746.79 in costs. (*Id.* PageID 3613.) Defendant T2 Financial, LLC d/b/a Revolution Mortgage opposes the Motion (Opp., ECF No. 151), and Equity replied (Reply, ECF No. 154). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Equity's Motion.

**I.    BACKGROUND**

Equity and Revolution are competing mortgage lenders. Equity sued Revolution and three individual employees in November 2021 alleging that Revolution solicited Equity's former employees to steal trade secrets and then used those trade secrets to divert mortgage loans from Equity to Revolution. (*See* Am. Compl., ECF No. 7.) Equity dismissed the individual employees as defendants (ECF Nos. 25, 26) and after discovery, the parties moved for summary judgment (ECF Nos. 46, 47). The Court denied Equity's motion for summary judgment (ECF No. 46) and granted in part and denied in part Revolution's motion (ECF No. 47). (ECF No. 80.) Equity proceeded to trial on three claims against Revolution: (1) tortious interference with a business

1

relationship, (2) conversion, and (3) misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61 ("OUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1839 ("DTSA").

After a five-day trial, the jury found for Equity on all three claims. (*See* Verdict Forms, ECF No. 143; Judgment, ECF No. 146.) Although the jury concluded that Equity had proven by clear and convincing evidence that Revolution acted willfully and maliciously in misappropriating Equity's trade secrets, the jury chose not to award Equity compensatory damages on its misappropriation of trade secrets claim. (Verdict Forms, PageID 3532.) Instead, the jury awarded damages only on Equity's conversion claim in the amount of $73,709.77. (*Id.* PageID 3537.) Before trial, Equity's last written settlement offer was $350,000 and Revolution's last written offer was $100,000. (ECF No. 151-1.)

**II. ANALYSIS**

Equity moves the Court for an award of $482,618.18 in attorneys' fees to Mitchell Sandler PLLC, $83,180.25 in fees to Porter Wright Morris & Arthur LLP, interest on those fees, and an award of costs in the amount $14,746.79. (*See* Mot.) Revolution opposes Equity's Motion and argues that Equity is not entitled to attorneys' fees or costs as the "prevailing party," and even if the Court were to award Equity attorneys' fees, the amount should be reduced to account for Equity's "limited degree of success" and its decision to "spurn[] a $100,000 [settlement] offer." (Opp., PageID 3828.) The Court begins its analysis by addressing Equity's right to attorneys' fees.

**A. Attorneys' Fees**

Generally, litigants in federal court bear their own attorneys' fees and expenses. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975); *see also Key Tronic Corp. v. U.S.*, 511 U.S. 809, 819 (1994) (explaining the "general practice of not awarding

2

attorney's fees to a prevailing party absent explicit statutory authority.") But like any general rule, there are exceptions. Several statutes include fee-shifting provisions dependent upon the success of the party seeking a judicial award of fees. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983).

Once a party establishes that they are entitled to attorneys' fees under an applicable fee-shifting statute, the Court calculates an award of attorneys' fees by using the lodestar method. *Yerkes v. Ohio State Highway Patrol*, No. 2:19-cv-2047, 2024 U.S. Dist. LEXIS 217755, at *35–36 (S.D. Ohio Dec. 2, 2024). The lodestar amount is calculated by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court may then adjust upward or downward that amount after considering several factors. *Barnes v. City of Cincinnati*, 401 F.3d 729, 745–46 (6th Cir. 2005). Ultimately, "[t]he party seeking the attorney's fees bears the burden of establishing entitlement to an award." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) (citation omitted).

### 1. Entitlement to Attorneys' Fees

First, the Court must determine whether awarding Equity attorneys' fees is appropriate. Both the OUTSA and DTSA permit the Court to award reasonable attorneys' fees to the prevailing party if the trade secret was willfully and maliciously misappropriated. Ohio Rev. Code § 1333.64(C) ("The court may award reasonable attorney's fees to the prevailing party," if "willful and malicious misappropriation exists."); 18 U.S.C. § 1836(b)(3)(D) ("if the trade secret was willfully and maliciously misappropriated, [the court may] award reasonable attorney's fees").

Here, the jury found that Revolution acted willfully and maliciously in misappropriating Equity's trade secrets. (Verdict Forms, ECF No. 143, PageID 3532.) As a result, Equity argues it was the prevailing party and is entitled to attorneys' fees. (Mot., PageID 3604.) Revolution

3

counters that Equity's "success on a single conversion claim . . . does not translate to Equity being the prevailing party for purposes of a fee shifting claim." (Opp., PageID 3809.)

But Equity's success was not limited to its conversion claim. The jury found that Equity prevailed on every count but only awarded damages on Equity's conversion claim. (*See* Verdict Forms.) A party need not prevail on every claim to be considered a prevailing party. *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 425 (6th Cir. 2012) (citation omitted). All that is required to be a prevailing party is a "judicially sanctioned change in the legal relationship of the parties." *Construcciones E Instalaciones Electromecanicas S.A. v. Hi-Vac Corp.*, No. 2:07-cv-234, 2010 U.S. Dist. LEXIS 95756, at *3 (S.D. Ohio Sep. 13, 2010) (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001)). As the Sixth Circuit has noted, a plaintiff "crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010) (explaining that the magnitude of the relief goes only to the amount of fees awarded).

The Court finds that Equity is the prevailing party for this "statutory threshold." *Hensley*, 461 U.S. at 433 (describing the "prevailing party" assessment as the "statutory threshold" to determine whether a party is entitled to attorneys' fees). Since the jury found that Revolution willfully and maliciously misappropriated Equity's trade secrets, Equity is the prevailing party and an award of attorneys' fees is appropriate. The Court must now determine what fee is reasonable under the lodestar method.

### 2. Lodestar Calculation

The lodestar amount multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Yerkes*, 2024 U.S. Dist. LEXIS 217755, at *36 (citing *Hensley*, 461

4

U.S. at 433). A reasonable hourly rate is determined based on the prevailing market rate, defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citation omitted). A reasonable fee should attract competent counsel, without producing a windfall for attorneys. *Coulter v. Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986), *abrogated on other grounds by Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 692 (6th Cir. 2016). The market rate is "not necessarily the exact value sought by a particular firm," but is what lawyers with similar skills and experience can charge within the Court's venue. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007).

Since this method is considered objective, "there is a strong presumption that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (quotations omitted). From the lodestar figure, a court may adjust the fee amount upward or downward based on certain factors. *Hensley*, 461 U.S. at 429–30 n.3, 436 (listing twelve factors but explaining the "results obtained" is the "most critical" factor).

Equity submitted detailed records including invoices that documented the hours and the fee rate billed by the two law firms that represented Equity: Porter Wright Morris & Arthur, LLP, and Mitchell Sandler PLLC. In total, Equity requests $83,180.25 from Porter Wright and $482,618.18 from Mitchell Sandler in attorneys' fees. (Mot., PageID 3601.)

### a. Hourly Rate

The district court retains broad discretion to determine what constitutes a reasonable hourly rate for an attorney. *Courthouse News Serv. v. O'Shaughnessy*, No. 2:22-cv-2471, 2023 U.S. Dist. LEXIS 204958, at *4 (S.D. Ohio Nov. 15, 2023) (Morrison, J.) (citation omitted). "A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and

its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011).

To support the requested fee amount, Equity attaches declarations from two partners: Molly Crabtree of Porter Wright (Crabtree Decl., ECF No. 149-2) and Ari Karen of Mitchell Sandler (Karen Decl., ECF No. 149-5). Each attorney included a table showing timekeepers from each firm who worked on this matter, along with their hourly rate and the number of hours they worked in 2021 through 2024.

Revolution argues that nominal billers (those who billed fewer than eight hours total) should be removed, and for those who were not nominal billers, their hourly rates should be reduced as follows:

| Timekeeper | Law Firm | Admitted | Equity's Original Blended Rate | Equity's Proposed Blended Rate | Revolution Proposed Rate |
|---|---|---|---|---|---|
| Ari Karen | Mitchell Sandler | 1996 | $ 673.75 | $ 530.00 | $ 475.00 |
| Katharine Batista | Mitchell Sandler | 2010 | $ 600.00 | $ 450.00 | $ - |
| Alexander Rogosa | Mitchell Sandler | 2016 | $ 521.58 | $ 450.00 | $ 250.00 |
| Gary Rubin | Mitchell Sandler | 1999 | $ 403.04 | $ 403.04 | $ 403.04 |
| Christopher McCall | Mitchell Sandler | 2008 | $ 525.00 | $ 525.00 | $ 300.00 |
| Sharon Ourien | Mitchell Sandler | 2017 | $ 485.62 | $ 430.00 | $ 250.00 |
| Sean Harding | Mitchell Sandler | 2016 | $ 404.96 | $ 404.96 | $ 250.00 |
| Karen Lindsey | Mitchell Sandler | n/a | $ 187.50 | $ 187.50 | $ 187.50 |
| Nick Helsabeck-Ochoa | Mitchell Sandler | n/a | $ 190.10 | $ 190.10 | $ 190.10 |
| Molly Crabtree | Porter Wright | 2001 | $ 529.23 | | $ 475.00 |
| L. Bradfield Hughes | Porter Wright | 1999 | $ 525.00 | | $ - |
| Ahmad Huda | Porter Wright | 2012 | $ 450.00 | | $ - |
| Gretchen Colavito | Porter Wright | n/a | $ 325.00 | | $ 325.00 |
| Kelly Fromwell | Porter Wright | n/a | $ 320.00 | | $ 320.00 |
| Barbara Harrison | Porter Wright | n/a | $ 275.00 | | $ 275.00 |

(*See* ECF No. 151, PageID 3833.) According to Revolution, Equity's hourly rates are excessive because several of the attorneys' rates were above the prevailing market rate. (*See* Opp., PageID

6

3825–26.) Revolution cites the 2019 Economics of Law Practice Study, a report from the Ohio State Bar Association (OSBA), which reported a mean hourly rate of $375 as of 2019. (*Id.* PageID 3825; *see* Ohio State Bar Association, 2019 Economics of Law Practice Study, at 45 (Dec. 2019), available at https://www.ohiobar.org/member-tools-benefits/practice-resources/practice-library-search/practice-library/economics-of-law/eol-2019/.)

This Court has relied on the OSBA fee survey in the past to help determine reasonable hourly rates. *See, e.g.*, *Morton v. O'Brien*, No. 2:18-CV-445, 2022 U.S. Dist. LEXIS 92705, at *8 (S.D. Ohio May 24, 2022) (Graham, J.) (collecting cases that relied on the OSBA's 2019 fee survey to determine the appropriate hourly rate); *Woodard v. O'Brien*, No. 2:18-CV-1523, 2022 U.S. Dist. LEXIS 111897 (S.D. Ohio June 23, 2022) (Marbley, J.) (relying in part on the OSBA fee survey); *O'Shaughnessy*, 2023 U.S. Dist. LEXIS 204958, at *7 (using the OSBA survey to reduce the requested hourly rate). The fee survey provides a useful "point of reference," especially when adjusted for inflation. *Gonter*, 510 F.3d at 618; *Regenold v. Ohio State Bd. of Educ.*, No. 2:21-cv-1916, 2023 U.S. Dist. LEXIS 122140, at *4 (S.D. Ohio July 14, 2023) (Graham, J.) (applying 4% increase to OSBA fees to adjust for inflation). But the OSBA Report alone cannot determine the reasonableness of the hourly rates. *See Northeast Ohio Coal. for the Homeless v. Husted*, No. 2:06-cv-562, 2014 U.S. Dist. LEXIS 137320, at *46 (S.D. Ohio Sept. 29, 2014) (Marbley, J.), *vacated in part on other grounds*, 831 F.3d 686 (6th Cir. 2016) (explaining that the rates in the Report may understate the standard practitioner fee and do not necessarily reflect "the skill, experience, and reputation of the responding attorneys").

While Porter Wright and Mitchell Sandler successfully represented Equity in this time-consuming case, the Court finds that a downward adjustment to some of Equity's counsel's billed rates is appropriate. In our market economy, lawyers are free to negotiate fees with clients. In a

7

fee shift to an opposing party, a different criteria is required. For this purpose, the per hour fee is capped at $500 per hour. *See O'Shaughnessy*, 2023 U.S. Dist. LEXIS 204958, at *7. Rates above $500 are well-above the OSBA Report's median rates, even after accouting for inflation. *See id.* A rate of $500 per hour is more appropriate and "would have attracted competent counsel." *Id.* Accordingly, the following attorneys' proposed blended rates are reduced to $500 per hour: Molly Crabtree, L. Bradfield Hughes, Ari Karen, Christopher McCall.

Second, Mitchell Sandler's hourly rates do not reflect the prevailing market rate in central Ohio. Equity explains that while Mitchell Sandler's rates "are different from Porter Wright's," the blended rate shown in the table above for certain timekeepers "reflects the Columbus market." (Mot., PageID 3607.) Not so. Further, other than the attorneys' years of practice, Equity provides "no information on the background, education, experience, position, or sample cases of any of the lawyers it identifies as having billed on the case," to justify these unusually high hourly rates. *O'Shaughnessy*, 2023 U.S. Dist. LEXIS 204958, at *7 (describing how the Court's analysis is hindered without such information).

For example, an associate at Mitchell Sandler who had practiced for less than eight years, billed over 250 hours to this case at a rate of $404.96 per hour. (*See* ECF No. 149-5, PageID 3676.) In *Regenold*, this Court held that a range of $380 to $450 per hour was reasonable for attorneys with 28 and 35 years of experience. *Regenold*, 2023 U.S. Dist. LEXIS 122140, at *6. Mitchell Sandler's associates had less than 10 years of legal experience, yet their hourly rates were within the same range. Equity provides no information about the attorneys' special experience to justify this inflated rate.

But Revolution's proposed hourly rate of $250 per hour for associates Alexander Rogosa, Sharon Ourien, and Sean Harding is too drastic. Alexander Rogosa was a senior associate when

this case went to trial and was heavily involved in the trial. Attorneys Ourien and Harding had over 7 years of experience. Thus, while the Court finds that a reduction in the hourly fee is warranted, it will reduce the Mitchell Sandler associates hourly rate to $350.00 per hour. Revolution does not argue for a reduction in the hourly rates of paralegals, so the Court will leave the hourly rates of paralegals as is.

### b. Hours Billed

Next, to calculate the lodestar, the Court must determine the reasonable number of hours expended. "[T]he prevailing party's lawyer should be the first gatekeeper in this task, exercising the same billing judgment she would with one's client." *Hines v. DeWitt*, No. 2:13-CV-1058, 2016 U.S. Dist. LEXIS 59344, at *13 (S.D. Ohio May 4, 2016) (Graham, J.), *aff'd sub nom. Hines v. City of Columbus*, 676 F. App'x 546 (6th Cir. 2017) (citing *Hensley*, 461 U.S. at 434). The Court may scrutinize "whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel." *Coulter*, 805 F.2d at 151. Excessive, redundant, or otherwise unnecessary hours should not be counted. *Hensley*, 461 U.S. at 434. "While representation by multiple legal counsel can be productive, the danger of duplication is a waste of resources which is difficult to measure." *O'Shaughnessy*, 2023 U.S. Dist. LEXIS 204958, at *9 (quoting *Coulter*, 805 F.2d at 152.)

First, Revolution argues that the Court should eliminate the hours of "nominal billers" or attorneys who "did not contribute substantive work on the case, did not participate at trial, and did not interact with or communicate substantively with Revolution's counsel." (Opp., PageID 3824.) There are three attorneys who billed less than eight hours total. Katherine Batista of Mitchell Sandler billed 1.7 hours to the case and spent .7 hours "review[ing] the docket and motion for summary judgment." (ECF No. 149-7, PageID 3731.) Similarly, Ahmad Huda of Porter Wright

9

billed 7.80 hours to the case, and she spent .2 hours "review[ing] [the Court's] opinion resolving various motions in limine." (ECF No. 149-4, PageID 3671.) Most of Attorney Huda's time was devoted to emailing other members of Equity's counsel, including internal emails to Attorney Crabtree. (*Id.* PageID 3670–71.) Attorney Hughes billed 5.75 hours to this case, 1.5 of which he spent "handl[ing] the electronic filing" of Equity's memorandum in opposition to Revolution's motion for summary judgment. (*Id.* PageID 3650.) He allocated another 1.5 hours to reviewing internal correspondence from Attorney Crabtree and "docket items forwarded by Ms. Crabtree." (*Id.*) Neither Attorney Huda, Attorney Batista, nor Attorney Hughes participated at trial.

Such nominal hours strike the Court as redundant given Equity's representation by multiple law firms. *See O'Shaughnessy*, U.S. Dist. LEXIS 204958, at *9. Thus, the Court will not count the hours billed by nominal billers: Ahmad Huda, L. Bradfield Hughes, or Katherine Batista. *See Hensley*, 461 U.S. at 436–37 ("The district court may attempt to identify specific hours that should be eliminated, . . . [t]he court necessarily has discretion in making this equitable judgment.").

Second, Revolution argues that the number of hours Equity billed was excessive for this "modest-sized lawsuit." (Opp., PageID 3824.) Revolution submits that "ten attorneys billed more than 1,248 hours to prepare and try this case." (*Id.*) Equity's excessive hours billed "justifies a 40% reduction of total hours to compute the lodestar[.]" (*Id.*) The Court agrees that a reduction is warranted given the size and complexity of this case.

### c. The Lodestar Amount

After removing the nominal billing attorneys and reducing the hourly rates to align with the prevailing market rate in central Ohio, the Court calculates a lodestar amount of $486,230.79. The Court reached this value utilizing the table below. The lodestar fee amount calculated by the Court reduces Equity's proposed fee amount by $79,567.64.

10

| | Timekeeper | Admitted | 2021-24 Hours | Reasonable Hourly Rate | 2021-24 Fees |
|---|---|---|---|---|---|
| **PORTER WRIGHT** | | | | | |
| | Molly Crabtree | 2001 | 130.55 | $ 500.00[1] | $ 65,275.00 |
| | ~~L. Bradfield Hughes~~ | ~~1999~~ | ~~5.75~~ | ~~$ 500.00~~ | ~~$ 3,018.75~~ |
| | ~~Ahmad Huda~~ | ~~2012~~ | ~~7.8~~ | ~~$ 450.00~~ | ~~$ 3,510.00~~ |
| | Gretchen Colavito | n/a | 7.5 | $ 325.00 | $ 2,437.50 |
| | Kelly Fromwell | n/a | 6.9 | $ 320.00 | $ 2,208.00 |
| | Barbara Harrison | n/a | 10.6 | $ 275.00 | $ 2,915.00 |
| | | | | | |
| | | TOTAL | 155.55 | | $ 72,835.50 |
| **MITCHELL SANDLER** | | | | | |
| | Ari Karen | 1996 | 24.1 | $ 500.00 | $ 12,050.00 |
| | ~~Katharine Batista~~ | ~~2010~~ | ~~0.7~~ | ~~$ 450.00~~ | ~~$ 315.00~~ |
| | ~~Katharine Batista~~ | ~~2010~~ | ~~1~~ | ~~$ 450.00~~ | ~~$ 450.00~~ |
| | Alexander Rogosa | 2016 | 266 | $ 350.00 | $ 93,100.00 |
| | Gary Rubin | 1999 | 158.6 | $ 403.04 | $ 63,922.14 |
| | Christopher McCall | 2008 | 87.6 | $ 500.00 | $ 43,800.00 |
| | Sharon Ourien | 2017 | 311.9 | $ 350.00 | $ 109,165.00 |
| | Sean Harding | 2016 | 254.6 | $ 350.00 | $ 89,110.00 |
| | Karen Lindsey | n/a | 5.4 | $ 187.50 | $ 1,012.50 |
| | Nick Helsabeck-Ochoa | n/a | 6.5 | $ 190.10 | $ 1,235.65 |
| | | TOTAL | 1114.7 | | $ 413,395.29 |
| | | TOTAL | 1270.25 | | $ 486,230.79 |

### 3. Adjustments to the Lodestar

Calculating the lodestar amount "does not end the inquiry." *Hensley*, 461 U.S. at 434. From the lodestar figure, a court may adjust the fee amount upward or downward based on certain relevant factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the

---

[1] Yellow fields in the table indicate values changed by this Court's Opinion and Order.

case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 429–30 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). "Most critical" among these factors is the "degree of success obtained." *Id.* at 436; *see also Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, No. 2:08-cv-390, 2014 U.S. Dist. LEXIS 146816, at *43–44 (S.D. Ohio Mar. 4, 2014) (explaining that the Court can reduce an award based on the results obtained by the litigants); *Bittner v. Tri-Cnty. Toyota, Inc.*, 569 N.E.2d 464, 466 (Ohio 1991) (same).

When analyzing the degree of success, the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. One way to think about the degree of success is to compare the amount of the damages awarded with the amount sought. *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also Fulkerson v. Yaskawa Am., Inc.*, No. 3:13-cv-130, 2015 U.S. Dist. LEXIS 144469, at *25 (S.D. Ohio Oct. 23, 2015) (Rice, J.) (reducing lodestar amount by 67% and explaining that the plaintiff obtained only 5% of the amount sought). "Few, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success." *McKelvey*, 768 F.3d at 495.

For this reason, the Sixth Circuit has "recognized that a district court may consider substantial settlement offers that are rejected in calculating fee awards as part of the 'degree of success' in the litigation." *Kritcher v. Prudential Sec., Inc.*, 799 F. App'x 376, 379 (6th Cir. 2020) (citing *McKelvey*, 768 F.3d at 495). "This is because '[i]n a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney.'" *Id.* (quoting *Marek*

12

*v. Chesny*, 473 U.S. 1, 11 (1985)). Accordingly, the district court "may consider spurned settlement offers as 'one factor' when considering the degree of success." *Hines*, 2016 U.S. Dist. LEXIS 59344, at *21.

At the settlement conference held one month before trial, Equity demanded $400,000 to settle the case and Revolution offered $70,000. (*See* ECF No. 99.) Equity countered at $365,000, Revolution increased its offer to $100,000, but the conference ended without a resolution. (*Id.*) In subsequent email correspondence, Equity revised its demand to $350,000 but Revolution maintained its offer of $100,000. (ECF No. 151-1, PageID 3835.) Equity declined Revolution's offer and this matter proceeded to trial, where Equity obtained a $73,709.77 jury verdict. (*See* Verdict Forms, ECF No. 143.) The rejected settlement offer of $100,000 thus exceeded Equity's ultimate recovery.

There is an explanation for the jury's very precise damage award—it is the amount of damages that Revolution conceded Equity was entitled to if the jury found that Revolution misappropriated Equity's trade secrets. While finding Revolution responsible on all three counts, the jury effectively adopted Revolution's proposed damages calculation. Notably, this amount was significantly less than the amount of damages ($350,000) that Equity demanded at trial. In fact, Equity only obtained roughly 21% of the amount of damages it sought at trial. Even so, Equity seeks over $500,000 in attorneys' fees.

The reasonableness of the fee is further called into question by the difference in the relief obtained by Equity at trial and the resources expended on the litigation. *See Hensley*, 461 U.S. at 435. The Court finds the fact that the requested attorneys' fee award is more than six times greater than the $73,709.77 jury verdict troubling, especially considering that Equity rejected a settlement offer higher than the jury's ultimate award.

13

Equity argues that it was not motivated to litigate against Revolution for financial gain, but "to get the guilty." (Mot., PageID 3609.) Because the jury returned a verdict for Equity on all three counts, Equity argues that it was successful. (*Id.*) But a reasonable litigant likely would not consider a monetary judgment under the money offered to settle the case a total success. *See McKelvey*, 768 F.3d at 495. Revolution counters that Equity's decision to spurn the $100,000 settlement offer justifies a downward adjustment of the lodestar by 60%. (Opp., PageID 3828.)

Revolution also argues that the fee award "run[s] contrary to the statutory scheme" under Ohio law. (*Id.* PageID 3818–19.) The OUTSA allows for punitive damages on misappropriations of trade secrets claims, but caps the recovery for willful and malicious misappropriation at three times the compensatory damages. (*Id.* (citing Ohio Rev. Code § 1333.63(B)). The damages cap, according to Revolution, is relevant for two reasons. First, the jury specifically awarded Equity $0.00 on its misappropriation of trade secrets claim. Thus, even if the Court awarded punitive damages in the form of attorneys' fees, the amount should be capped at three times the compensatory damages—three times $0.00. (*Id.* PageID 3819.) Second, even if the Court used the compensatory damages amount awarded on the conversion claim, three times $73,709.77 is $221,129.31—well below the requested fee amount. (*See id.*)

Last, Revolution argues that by rejecting the settlement offer and proceeding to trial, Equity incurred over $200,000 more in attorneys' fees. (*See* Opp., PageID 3838 (citing Porter Wright's Invoices March 2024, ECF No. 149-4, PageID 3670–73; Mitchell Sandler's Invoices February and March 2024, ECF No. 149-7, PageID 3758–69).) The decision to reject the settlement offer at the settlement conference came after Equity voluntarily dismissed of several individual defendants (ECF Nos. 25, 26) and filed an unsuccessful motion for summary judgment. (Opinion & Order, ECF No. 80 (denying Equity's motion for summary judgment and granting in part Revolution's

14

motion for summary judgment).) Since Equity achieved limited success at trial, Revolution submits that it should be not forced to bear the costs of an unnecessary trial.

While Equity vindicated an important goal at trial—a jury finding of Revolution's wrongdoing—the Court finds that Equity's success was limited and that the fee amount should be reduced in relation to the results obtained. *Hensley*, 461 U.S. at 440 (explaining that courts "should award only that amount of fees that is reasonable in relation to the results obtained"). Usually, "[a]n adjustment due to a lack of success . . . takes the form of an across-the-board reduction of some percentage of the lodestar." *Hines*, 2016 U.S. Dist. LEXIS 59344, at *24 (reducing fee award by 50%); *Fulkerson*, 2015 U.S. Dist. LEXIS 144469, at *28 (reducing the plaintiff's recovery by 67% after plaintiff obtained only 5% of defendant's final settlement offer); *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 422 (6th Cir. 2004) (affirming 35% reduction for partial success); *Snide v. Disc. Drug Mart, Inc.*, No. 1:11-CV-244, 2013 U.S. Dist. LEXIS 165584, at *30 (N.D. Ohio Oct. 30, 2013) (50% reduction to lodestar because of limited success); *but see Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 605 (6th Cir. 2014) (concluding the district court abused its discretion by reducing the requested hours by 85%).

The Court finds a 50% reduction to the lodestar appropriate. This reduction accounts for expenses incurred after Equity spurned Revolution's settlement offer—an offer higher than Equity's ultimate recovery. The reduced fee award is also more harmonious with the statutory damages cap for misappropriation of trade secrets under Ohio law. *See* Ohio Rev. Code § 1333.63(B). Porter Wright's fee amount will be adjusted downward from $72,835.50 to $36,417.75. Mitchell Sandler's fee amount will be adjusted from $413,395.29 to $206,697.65, for a total amount of $243,115.39. In total, the lodestar is reduced from **$486,230.79** to **$243,115.40.**

15

B. **Interest on Attorneys' Fees**

Equity also argues for interest on its attorneys' fees but concedes that doing so is within the Court's discretion. (Mot., PageID 3612.) To support its request for interest, Equity cites *Kehoe Component Sales Inc. v. Best Lighting Prods.*, and *Kendall Holdings*. *Kehoe*, No. 2:10-CV-00789, 2014 U.S. Dist. LEXIS 143503, at *23–24 (S.D. Ohio Oct. 8, 2014); *see also Kendall Holdings*, 2014 U.S. Dist. LEXIS 146816, at *61–62. In both cases, the Court awarded interest to compensate the prevailing party for the "years-long delays in payment." *Id.* (awarding 5% interest). But the litigation in *Kendall* and *Kehoe* spanned over six years; in comparison, this case was resolved in only three years. The Court finds that Equity has been adequately compensated by the jury verdict and the award of attorneys' fees and declines to award interest.

C. **Litigation Costs**

Federal Rule of Civil Procedure 54(d) provides that costs, other than attorneys' fees, should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1). Thus, there is a presumption for awarding costs and once Rule 54(d) is invoked, the unsuccessful party bears the burden of overcoming it. *White & White, Inc. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). The Court "may tax as costs" clerk and marshal's fees, transcripts fees, docket fees, and printing fees. *See* 28 U.S.C. § 1920. "[B]ut the decision to award costs is ultimately discretionary." *Metron Nutraceuticals, LLC v. Adams*, No. 1:20-cv-01803, 2023 U.S. Dist. LEXIS 165852, at *14 (N.D. Ohio Sep. 19, 2023) (citing *White & White*, 786 F.2d at 730).

Equity requests $1,450 in court-filing fees and $1,788.70 in printing costs incurred by Porter Wright to create trial exhibits. (Mot., PageID 3613; ECF No. 149-3, PageID 3617.) Equity also requests "$11,195.59 in transcript costs of depositions and $321.50 for ingesting electronic data into Equity's discovery database" to Mitchell Sandler. (*Id.*; ECF No. 149-6, PageID 3676.)

16

Revolution does not contest the specific costs requested by Equity, but argues that Equity is not the prevailing party for purposes of Rule 54(d). (Opp., PageID 3821.) Having found that Equity is the prevailing party (*see* Section II(A)(1)), the Court concludes that Revolution has not satisfied its burden to overcome the presumption for awarding costs. *White & White*, 786 F.2d at 730. Accordingly, the Court awards Equity litigation costs in the amount of **$14,746.79**.

### III. CONCLUSION

Accordingly, Equity's Motion for Award of Attorneys' Fees, Interest, and Costs (Mot., ECF No. 149) is **GRANTED IN PART** and **DENIED IN PART**. Equity is awarded $243,115.39 in attorneys' fees—$36,417.75 to Porter Wright and $206,697.65 to Mitchell Sandler. The Court will also award Equity $14,746.79 in litigation costs, for a total award of **$257,862.19**.

This case remains closed.

**IT IS SO ORDERED.**

**3/5/2025**  **s/Edmund A. Sargus, Jr.**
**DATE**  **EDMUND A. SARGUS, JR.**
  **UNITED STATES DISTRICT JUDGE**